### Commonwealth v. Stone.

(Decided June 10, 1915.)

Appeal from Spencer Circuit Court.

Intoxicating Liquors—Prosecutions—Sufficiency of Evidence of Unlawful Sale.—The evidence in this case examined and held sufficient to authorize the submission of the case to the jury. While the proof of agency is not direct, there is sufficient circumstantial evidence upon which to rest an inference that the boy who sold the whiskey did so as agent for the accused; and it is one of the functions of the jury to draw inferences.

JAMES GARNETT, Attorney General, and ROBERT T. CALDWELL, Assistant Attorney General, for appellant.

J. W. CRUME and BENEDICT ELDER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Certifying the law.

Appellee was tried for selling intoxicating liquors in local option territory, upon an indictment returned

against him in the Spencer Circuit Court; and at the close of the evidence for the Commonwealth, the trial court directed a verdict for the defendant. The Commonwealth appeals. The only question presented is the sufficiency of the evidence to authorize the submission of the case to the jury.

The prosecuting witness, Herman Snider, testified in part as follows: "Q. Do you know the defendant, Zack, alias Peck Stone, or did you know him last summer? A. Yes, sir. Q. Do you know what business he was engaged in in the summer of 1913, last summer? A. Well; he was running a market wagon the only time I seen him. Q. Now, did he always run the wagon himself, or did he sometimes have a driver? A. He had a driver sometimes. Q. Did you get some whiskey or beer, or both, from his wagon? A. Yes, sir. Q. What did you get, beer or whiskey? A. I got whiskey and beer, both. Q. Where was the wagon? A. It was in Mr. Charley Cotton's livery stable. Q. Do you remember what day it was? A. No, sir. B. Do you remember what month? A. No, sir; it was some time in the summer, along the middle of the summer. Q. 1913? A. Yes, sir. Q. What kind of a wagon was it? A. It was just a covered huckster wagon, is all I know. Q. Just tell what occurred? A. Well, there was a boy in the wagon; I asked him if he had any whiskey; and he said 'Yes.' I told him I wanted a quart of whiskey and two bottles of beer. He sold me the whiskey and handed me two bottles of beer; and insisted on me taking half a dozen bottles. Mr. Peck Stone came up about that time, and told him to give me the two bottles of beer, that was what I asked for, and to go on. Q. Did the boy do what Mr. Peck Stone told him to do, or not? A. Yes, sir; and after he handed me the two bottles, I didn't pay him for the beer, but I paid him for the whiskey; they went on out of the livery stable. * * * They went right on and never waited for any pay; I didn't have time to pay them. Q. Now, how much did you pay the boy altogether, Mr. Snider? A. One dollar. Q. Now, was Mr. Peck Stone, the defendant, there when you paid the boy? A. I don't remember; I don't believe he was there when I paid the boy for the whiskey; I don't remember about that. Q. Did you notice Mr. Stone when he first came into the livery stable? A. No, sir; I didn't notice him until he came back to the wagon. Q. How near to the wagon did he

come? A. He came right up to the wagon. Q. What kind of a wagon was Mr. Stone driving, you say? A. Just an ordinary huckster wagon, a covered wagon. Q. Did you know who this boy was? A. No, sir. Q. Did you notice what part of the wagon he got the beer and liquor out of? A. Well, he was sitting on the seat; he just reached back and got the quart of whiskey and the beer. Q. Did you ever see that young man in the wagon before that with Mr. Peck Stone? A. No, sir; I don't know that I ever seen him in there before. Q. You say you paid the money to the boy for the whiskey? A. Yes, sir."

The record is silent as to the theory upon which the trial court directed a verdict for the defendant. But appellee, in his brief, says: "The State has proved that there was an illegal sale of whiskey by a boy. It has attempted to prove that the boy was acting for appellee, Stone; but, as a matter of direct proof, has admittedly failed."

The evidence shows clearly that Stone was the owner of the wagon which had at least one quart of whiskey and six bottles of beer in it, and that he was in charge of both wagon and driver, as he directed the boy to deliver to Snider the two bottles of beer after the whiskey had been delivered, and ordered him to go on; and the boy delivered the beer and he went on, and appellee went with him. The wagon was a covered wagon, and the boy reached back in it and got the quart of whiskey and the beer. If it was appellee's whiskey and beer that the boy was selling, and if the boy was selling it for appellee, then appellee was guilty. The fact that he was in charge is sufficient to authorize a finding that it was his whiskey and beer that was sold; and the fact that the boy sold the whiskey and that he delivered the beer in the presence of Stone and wanted the witness to take more in Stone's presence, was sufficient to authorize a finding that the boy was selling for appellee.

While the proof of agency was not direct, the circumstances were sufficient to warrant the belief that the boy was acting as appellee's agent; and it is one of the important functions of the jury to draw inferences from circumstantial evidence. The trial court erred in not permitting the jury to do so in this case.

This opinion is ordered to be certified as a correct exposition of the law. Civil Code, Sections 335 and 352.